### RICHARDSON *v.* MESSINA.

1. Bills and Notes—Default—Holder—Defenses Available.

   A party who acquires a promissory note after default thereon by the maker is not a holder in due course and is subject to the defenses of absence or failure of consideration, should they be established in whole or in part (CL 1948, §§ 439.30, 439.54).

---

References for Points in Headnotes

[1] 8 Am Jur, Bills and Notes §§ 431, 572.
[2] 46 Am Jur, Sales § 315.
[3] 46 Am Jur, Sales § 349.
[5] 46 Am Jur, Sales § 333.
[6] 8 Am Jur, Bills and Notes § 281.
[7] 46 Am Jur, Sales §§ 761, 762.

2. SALES—WARRANTY OF FITNESS—AUTOMATIC CAR-WASHING EQUIP-
MENT.

Trial judge's finding in nonjury case that there was a warranty
of fitness as to automatic car-washing equipment for which
conditional sales promissory note had been given *held*, cor-
rect in action brought on the note (CL 1948, § 440.15).

3. SAME—IMPLIED WARRANTY—AUTOMATIC EQUIPMENT—FAILURE OF
CONSIDERATION.

Equipment sold as automatic in its operation is impliedly war-
ranted to be automatic and a failure of automatic operation
involves a failure of consideration for note given in payment
for the purchase (CL 1948, § 440.15).

4. SAME—DISAVOWAL OF WARRANTIES—IMPLIED WARRANTY.

A seller's disavowal of warranties, other than those specified, if
any, is not inconsistent with a warranty of fitness implied by
law.

5. SAME—WARRANTY—IMPLIED WARRANTY.

A vendor who desires to avoid that warranty which the law
implies must incorporate it in his contract or insert therein
a warranty which will exclude all others (CL 1948, § 440.15).

6. BILLS AND NOTES—CONDITION PRECEDENT TO LIABILITY.

The interlineation in a promissory note that payments were
"to start 1 month after *all* equipment is operating" constituted
a condition precedent to liability on the note.

7. SALES—RESCISSION—AUTOMATIC CAR-WASHING EQUIPMENT.

The requirement of redelivery of material purchased under con-
ditional sales contract as to automatic car-washing equipment
which failed to function automatically, in order to effect re-
scission must be construed reasonably and, as so construed,
rescission was properly found to have been effected under
evidence adduced (CL 1948, § 440.15).

Appeal from Macomb; Carroll (Howard R.), J.
Submitted April 14, 1960. (Docket No. 61, Calendar
No. 47,940.) Decided September 16, 1960.

Assumpsit by R. B. Richardson and R. B. Richard-
son, Jr., copartners doing business as Richardson
Company, against Vincent Messina, Walter Jabalee,
Patrick Higdon and Helen M. Higdon, individually
and as present or former copartners doing business
as Town and Country Auto Wash, for sums due on
conditional sales promissory note. Judgment for
plaintiffs in reduced amount, the major portion

being denied because of breach of implied warranty and rescission. Plaintiffs appeal. Affirmed.

*Moll, Desenberg, Purdy & Glover,* for plaintiffs.

*Sanborn & Monks,* for defendants.

SMITH, J. The action before us is brought at law upon a conditional sales promissory note. Plaintiffs were not holders in due course thereof, the note being in default upon their acquisition thereof,[*] and are subject to the defenses of absence or failure of consideration, in whole or in part,[†] should such be established. The defense asserted is rescission for breach of warranty of fitness.

The controversy concerns automatic car-washing equipment. Prior to the purchase of the machinery hereinafter described, defendants relied upon manual operation. Plaintiffs' agent proposed to mechanize the operation through the use of a wheel washer that was represented to be "completely automatic and required no man power to operate," brush equipment to wash the sides and tops of the cars, also "completely automatic in operation," and "a completely new idea in car-drying equipment," namely, a flexible nozzle type which, also "was fully automatic in operation." Such equipment was contracted for, it being financed in part through the conditional sales note here sued upon. The machinery was installed in September of 1956. Upon the evidence before the trial judge he was well warranted in finding that serious trouble with the equipment was experienced from the very outset. The wheel washer, upon occasion, gouged tires, and threw the front wheels out of alignment, scraped paint off rims and

---

[*] CL 1948, § 439.54 (Stat Ann 1959 Rev § 19.94), *Miller* v. *Ashton,* 241 Mich 46.

[†] CL 1948, § 439.30 (Stat Ann 1959 Rev § 19.70).

streaked the body sides "because the steam wasn't shut off." The brushes damaged aerials and the top nozzle of the blower unit functioned improperly, also causing damage to cars being washed. Efforts were made at once to correct the operation of the equipment but troubles of various kinds persisted. Business was adversely affected. "Our customers were just going out and telling everybody that if you go in that building, why you are going in at your own risk, you might come out with part of your car or just half of it, and you don't know what you are going to come out with. That was the conversation around Mount Clemens." After about 1 month of this kind of operation, defendant Patrick Higdon, on October 17, 1956, wrote plaintiffs, in part, as follows:

"As this is a small town and we don't have much transient business we have to depend on repeat customers. In the last month we have paid over $200 for damages caused by this equipment. As word of this gets around it will result in the loss of much business. Therefore, you can readily understand why we cannot afford to keep this equipment and having exhausted all my time and patience I have come to the final decision that the blower and wheel washer must be removed and returned to you immediately. I am requesting your immediate attention in this matter."

Subsequent thereto further discussions were had and adjustments and changes made but difficulties continued. Defendants have made no payments upon the note. The wheel washer has not been used since May of 1957, although the blower has been used, with, however, manual operation, since that time.

The defendants count upon the letter of October 17th, above quoted in part, as a rescission. The plaintiffs assert, however, that defendants' contin-

ued use of the equipment thereafter is inconsistent with rescission.

There was, as the trial judge correctly found, a warranty of fitness. What these purchasers sought to purchase was automatic car-washing equipment. They wished to replace their manual operation with a mechanized operation. They did not get it, as the evidence amply demonstrates. Equipment sold as automatic in its operation is impliedly warranted to be automatic* and a failure of automatic operation involves a failure of consideration. Moreover, the seller's disavowal of warranties (other than those specified, if any), is not inconsistent with the warranty of fitness implied by law.

" 'Where one sells an article for a particular purpose, he thereby warrants it fit for that purpose.' *Blodget* v. *Detroit Safe Co.*, 76 Mich 538, 541. * * * If a vendor in such cases [where the entire contract is expressed in a writing] desires to avoid that warranty which the law implies, he must incorporate it in his contract, or insert therein a warranty which will exclude all others. Where a parol express warranty has been agreed upon outside the written contract, and that warranty is such as the law implies without any agreement, the vendee cannot be deprived of the benefit of this warranty by a provision in the contract that 'there is no agreement or understanding between the salesman and myself otherwise than herein mentioned.' Such a clause is not in conflict with the implied warranty which the law attaches to all such contracts." *Little* v. *G. E. Van Syckle & Co.*, 115 Mich 480, 483, 484.

Our conclusions in this respect, we might add, are fortified by certain provisions of the instruments before us. A condition precedent to liability on the note was the proper functioning of all equipment, the note bearing the interlineation, "payments to start

---

* CL 1948, § 440.15 (Stat Ann 1959 Rev § 19.255).

1 month after *all* equipment is operating." As the trial court correctly observed with respect to this language, it clearly meant that "the purchasers intended that all of the equipment would operate properly before payments were to become due."

But, appellants further argue, the purchasers cannot rely upon their attempted rescission because of their failure to return, and their continued use of the equipment thereafter. The problem presented arises out of the alternative courses of action open to one who has suffered fraud or misrepresentation. He may either affirm the transaction and sue for damages, or he may disaffirm, in which event he is entitled to be reinstated to the position he formerly occupied. The latter alternative is fraught with the hazards collateral to disaffirmance. He may not, of course, disaffirm and at the same time exercise rights of ownership and enjoy profits inconsistent therewith. At the same time there are many situations in which substantial use of the unsatisfactory article is necessary in order fully to examine, to make satisfactory adjustment, or, indeed, to prevent the accrual of even greater damage to the unfortunate purchaser, arising from the exigencies of his business. It may be unfeasible to remove *instanter,* because of physical or economic considerations. It does not lie in the seller's mouth to demand the utmost in nicety between permissible and impermissible use, for the perilous situation in which the purchaser finds himself arises from the imperfections of that furnished, for a consideration, by the seller himself. The ultimate inquiry at this point* is whether or not the purchaser has in truth "accepted" the article, or, on the other hand, abandoned (or in good faith sought to abandon) the article and surrender his interests therein. Thus we have held that

---

* See discussion in 2 Durfee and Dawson's Cases and Materials on Remedies, Restitution at Law and in Equity, pp 161–164.

where, as here, continued efforts, made in good faith and for a time deemed reasonable under all the circumstances, to remedy the difficulties encountered, rescission is not defeated by failure immediately to return.*

Nor was the purchaser's rescission defeated, upon the facts before us, by their failure to redeliver the equipment to the seller. The requirement of redelivery must be reasonably construed. Here the trial court found that the blower and wheel washer were "attached to the building and [that] manual delivery was not practical." The situation was analogous to that examined by us in *Bailey* v. *Perkins,* 224 Mich 27, wherein we held that an attorney's letter unequivocally tendering back certain property was a sufficient tender back to support rescission. Here the letter of October 17th, it will be recalled, closed with the words: "I have come to the final decision that the blower and wheel washer must be removed and returned to you immediately. I am requesting your immediate attention in this matter."

The judgment below is affirmed. Costs to appellees.

Dethmers, C. J., and Carr, Kelly, Black, Edwards, Kavanagh, and Souris, JJ., concurred.

---

* *Felt* v. *Reynolds Rotary Fruit Evaporating Co.,* 52 Mich 602.